UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDRE T. WARE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:24-CV-00210 PLC |
| | ) |
| ST. LOUIS COUNTY JAIL, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

Self-represented plaintiff Andre Ware, an inmate currently incarcerated at the St. Louis County Justice Center, brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is before the Court upon the motion of plaintiff for leave to proceed in forma pauperis, or without prepayment of the required filing fees and costs. Having reviewed the motion and financial information, the Court will grant the motion and assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). For the reasons discussed below, the Court dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has failed to submit a certified prison account statement for a *six-month period*. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997). If plaintiff is unable to pay the initial partial filing fee, he must submit a new certified copy of his prison account statement for a six-month period in support of his claim.

### The Complaint and Supplemental Documents

Plaintiff Andre Ware, who is currently incarcerated at the St. Louis County Justice Center in Clayton, Missouri, filed this instant action alleging violations of his civil rights. He brings this action pursuant to 42 U.S.C. § 1983. Plaintiff names the following as defendants in this action: St. Louis County Jail (properly referred to as the St. Louis County Justice Center); Missouri State Public Defender's Office; St. Louis County 2nd and 3rd Floor; Corrections of Medicine Department at the St. Louis County Justice Center; and City of St. Louis Jail (properly known as the St. Louis City Justice Center).

Plaintiff's complaint is extremely difficult to read. However, because plaintiff has included exhibits to his complaint, the Court has been able to discern the gist of his allegations in this action. *See* Fed.R.Civ.P.10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.).

Plaintiff states that he does not feel safe at the St. Louis County Justice Center. He complains that he has been targeted by correctional officers. He states in a conclusory manner that he has been held against his will; tased; pepper-sprayed; subjected to force; not had his medical needs properly treated (no surgery for his face and a failure to have his glasses' prescription filled); given food trays with missing food; taken to the emergency room without documentation; placed

in the infirmary in a psychiatric cell for seventy-five (75) days; had the water turned off in his cell to repair a sprinkler system for one day; and transferred to the St. Louis City Justice Center for twelve (12) days "illegally." However, attached to the complaint are approximately twenty-five (25) pages of Inmate Incident Reports from the St. Louis Justice Center, which indicate that plaintiff has had difficulty following orders during his detention at the St. Louis County Justice Center.

An Incident Report filed on June 10, 2023, indicates that plaintiff was fighting with inmate Anthony Scott in the recreation yard on that date. Plaintiff indicates that he had a broken nose because of the incident, as well as lacerations to his face, and he was taken to St. Louis University Emergency Room for treatment for his nose and face. As a result of fighting with another inmate, plaintiff was subject to disciplinary action and placed on "ADPH status." Plaintiff complains that he does not have the medical records from the Emergency Room, but if he did have the records they would show he needed surgery on his face.

On consecutive days, July 16th and July 17th, 2023, plaintiff broke the sprinkler head in his cell in cell 19. As a result, he was subject to disciplinary action and placed on "ADPH status." After breaking the sprinkler on July 17, 2023, for the second day in a row, plaintiff was briefly placed in a restraint chair. Despite disciplinary action, on July 18, 2023, plaintiff again broke the sprinkler head in his cell for the third day in a row. Plaintiff was then moved to cell 26 in the infirmary to what appears to be a psychiatric unit.

On August 10, 2023, plaintiff was still housed in a cell in the infirmary when he was caught attempting to break the sprinkler head in his cell with a deodorant bottle. When he was instructed to place his bottle down and place his hands through the food port he failed to comply with the directive. Plaintiff was given several warnings that he would be tased or that pepper spray would be used to subdue him if he failed to comply; however, he still failed to place his hands through

3

the food port to be restrained. Plaintiff was pepper sprayed through the food port twice, and eventually he complied with officers' directives to place his hands through the food port. Decontamination spray was applied to plaintiff's face and eyes, and plaintiff was placed in a restraint chair for a short period of time.

On August 22, 2023, plaintiff again broke the sprinkler head in his cell in the infirmary. He was taken from his cell and again placed in the restraint chair for a short period of time.

On October 30, 2023, at approximately 12:30 a.m., plaintiff started banging and kicking on his cell door in the infirmary. Plaintiff was yelling "I was supposed to be released open this door." When officers were unable to reason with plaintiff or calm him down, plaintiff was again placed in the restraint chair for a short period of time. He was then written up for creating a disturbance while on lockdown.

On November 4, 2023, at 7:45 p.m. plaintiff again started kicking and banging on his cell door. When officers were unable to calm him down through dialogue, plaintiff was taken to the restraint chair for approximately two hours for his own safety. Plaintiff was again written up for creating a disturbance.

On November 11, 2023, at 5:50 p.m. plaintiff was kicking and banging on his cell door. Officers again were unable to calm him down. He was asked to come to the food port so he could be restrained. Plaintiff refused to submit to restraints, and eventually pepper spray was sprayed through the food port around 6:10 p.m. and again at 6:14 p.m. Eventually plaintiff complied with the directive to place his hands in the food port, and he was secured in the restraint chair at approximately 6:20 p.m. and decontamination spray was applied to his face and eyes. Plaintiff was kept in the restraint chair an additional hour "due to his continued threats of destruction of county property when he was returned to his cell." However, plaintiff was returned to his cell at approximately 9:30 p.m. without incident.

On December 6, 2023, at approximately 5:00 p.m., plaintiff refused to comply with a directive to lockdown when dinner trays were being passed out. Because of his failure to comply, he was assessed discipline of "loss of three walks." The Court assumes this refers to loss of indoor recreation time.

Although plaintiff has not included an Incident Report for December 28, 2023, it appears he was also subject to discipline on that date. He has included with his complaint a copy of a Disciplinary Hearing Information Form indicating that a hearing was held relative to a conduct violation issued on December 28, 2023. In the comments under "Hearing Findings," Chairperson Lt. Joshua Showmaker stated:

> This reporting Lt. Showmaker attempted to conduct a hearing with Inmate Ware, but he only wanted to rant about his charges and why he's still here in jail. Considering inmate Ware regularly refuses to lockdown to the point where incident reports aren't even being written anymore (I have responded to numerous radio calls for Ware refusing to lockdown), I recommend 21 days on lockdown status for this incident.

Captain Charles Mettlach approved a fourteen-day (14-day) stay in disciplinary segregation on January 27, 2024.

On January 3, 2024, at 1:50 p.m. plaintiff refused several directives to "step in from his walk." After being asked repeatedly to come in from his walk and lockdown, plaintiff failed to step into his cell. Plaintiff was told he would be tased if he refused to lockdown, but he still failed to step into his cell. After being tased, plaintiff was able to be restrained and placed in the soft restraint chair at 2:05 p.m. Plaintiff was removed from the restraint chair at approximately 4:03 p.m.

On January 12, 2024, at approximately 2:02 p.m., plaintiff was told to "step in from his walk" when he again refused to lockdown. After being given the directive several times, plaintiff finally complied with the order when three additional custody staff came to his unit to enforce the

order. Disciplinary action was recommended because of plaintiff's failure to follow directives, including loss of his walks for two days.

Plaintiff seeks monetary damages in this action.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged,

*Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Discussion

Plaintiff is a self-represented litigant currently incarcerated at St. Louis County Justice Center who brings this civil action pursuant to 42 U.S.C. § 1983. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss plaintiff's claims against defendants.

First, plaintiff's claims against the St. Louis County Justice Center (including the 2nd and 3rd Floor) and the St. Louis City Jail are subject to dismissal because Jails are not legal entities amenable to suit. *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). *See also Ketchum v. City of West Memphis, Ark.,* 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities).

Although plaintiff asserts that he is suing the St. Louis County Justice Center and the St. Louis City Jail in their "official capacities," he has not indicated unconstitutional policies or customs of these entities or their municipalities under which he is suing. A political subdivision generally cannot be held vicariously liable under 42 U.S.C. § 1983 for unconstitutional acts performed by its employees. *See Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A political subdivision can only be held liable under § 1983 if a constitutional violation resulted from an official policy, custom, or a deliberately indifferent failure to train or supervise. *Id.*; *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018)

(recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same.

Here, plaintiff's facts do not point to the existence of any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by a governing body" as being at issue in this case. *See Angarita v. St. Louis Cty.,* 981 F.2d 1537, 1546 (8th Cir. 1992). He does not claim that a specific staff member's actions at either Jail were the result of "a deliberate choice of a guiding principle or procedure made by a municipal official who has final authority regarding such matters." *See Corwin v. City of Independence, Mo.,* 829 F.3d 695, 700 (8th Cir. 2016). Plaintiff also has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" a municipal entity's employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct, as he only alleges specific incidents on specific dates that he believes violated his constitutional rights. *See Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013). Additionally, he has not demonstrated that either Jail was deliberately indifferent in failing to train or supervise its employees. That is, he has not shown that either Jail or municipality governing either Jail "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.,* 397 F.3d 1118, 1122 (8th Cir. 2005). For these reasons, plaintiff has failed to state a claim against the St. Louis County Justice Center (including the 2nd and 3rd Floor) or the St. Louis City Jail. *See Ulrich v. Pope Cty.,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).[1]

---

[1] For these same reasons plaintiff has also failed to state a claim for relief against the defendant he refers to as "Corrections of Medicine Department" at the St. Louis County Justice Center. The Court presumes this is simply yet another claim against the St. Louis County Justice Center.

Last, the Court finds that plaintiff cannot state a claim against the Missouri Public Defender's Office. "The essential elements of a [42 U.S.C.] § 1983 claim are: (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020). A defense attorney, whether appointed or retained, does not act under color of state law, and thus cannot be liable for the alleged deprivation of constitutional rights under 42 U.S.C. § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990) (stating that the Eighth Circuit "has repeatedly held that both retained and appointed attorneys are not liable for deprivations of constitutional rights under 42 U.S.C. § 1983 for the reason that they do not act under color of state law"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel"). As such, plaintiff's claims for relief against the Missouri Public Defender's Office are subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [ECF No. 2] is **GRANTED**. *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 29th day of March, 2024.

          HENRY EDWARD AUTREY
          UNITED STATES DISTRICT JUDGE